John W. Huber (7226)
Marc T. Rasich (9279)
Daniel J. Wadley (10358)
Alexander Baker (17163)
GREENBERG TRAURIG LLP
222 S. Main Street, Suite 1730
Salt Lake City, UT 84101
Telephone: 801.478.6900
john.huber@gtlaw.com
marc.rasich@gtlaw.com
wadleyd@gtlaw.com
bakera@gtlaw.com

*Attorneys for Plaintiff True North United Investments, LLC*

<hr>

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| TRUE NORTH UNITED INVESTMENTS, LLC, a Utah limited liability company, individually and derivatively on Behalf of BLOCKCHAIN GAME PARTNERS, INC., a Wyoming Corporation, d/b/a GALA GAMES; <br><br>       Plaintiff, <br><br> v. <br><br> ERIC SCHIERMEYER, <br><br>       Defendant, <br><br> -and- <br><br> BLOCKCHAIN GAME PARTNERS, INC., a Wyoming Corporation, d/b/a GALA GAMES, <br><br>       Nominal Defendant | **VERIFIED COMPLAINT FOR DIRECT AND DERIVATIVE ACTION** <br><br><br> Case No. 2:23-cv-00590-CMR <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff True North United Investments, LLC ("True North"), through its attorneys, directly and derivatively on behalf of Blockchain Game Partners, Inc. d/b/a "Gala Games" ("BGP") brings this complaint against Defendant Eric Schiermeyer, for corporate waste, conversion, unjust enrichment, and removal of Schiermeyer as a director and president of BGP. True North alleges the following on information and belief, except as to the allegations specifically pertaining to True North, which are based on actual knowledge:

## INTRODUCTION

1.     This action arises out of the unlawful scheme and course of conduct pursuant to which Schiermeyer, without board or shareholder knowledge or approval: (a) caused BGP to sell off and waste millions of dollars in company assets, including "burning off" approximately $600 million in Gala and shareholder assets; (b) caused BGP to lend millions of BGP funds to himself for personal interests; (c) usurped corporate opportunities by forming entities in Switzerland and Dubai to pursue business opportunities that rightfully belong to BGP (and inserting himself as the controlling shareholder); (d) caused BGP to operate without notice to or input from True North's manager and BGP director, Wright Thurston, thus eliminating Thurston's ability to help guide BGP to the benefit of the company and its shareholders; (e) caused BGP to operate with materially-defective financial controls and/or to provide materially incomplete or incorrect information to Thurston; (f) caused BGP to fail and refuse to provide True North and Thurston with corporate records despite repeated requests; and (g) engaged in systematic, intentional, and deceptive behavior to the detriment of BGP and its shareholders.

2.     True North brings certain claims derivatively, because, for the reasons detailed below, the BGP board, as currently composed, cannot do so, and cannot consent to such claims.

*ACTIVE 688127843v2*

3.      Schiermeyer's actions have been ongoing and have seriously damaged – and threaten to further damage – BGP. Those actions also have caused and threaten to continue to cause damage to the rights and interests of True North and various other minority shareholders arising under the Founders Agreement and from its position as a 44.762% shareholder of BGP.

4.      Schiermeyer's malfeasance, mismanagement, and self-dealing have resulted in hundreds of millions of dollars in damage to BGP's reputation and company and shareholder assets.  Unless enjoined, Schiermeyer's continuing disregard for the interests of the company and its shareholders threatens to imminently and irreparably harm BGP.

5.      By this action, True North seeks to rectify the harm to the company caused by Schiermeyer's actions.

## THE PARTIES

6.      True North United Investments, LLC is a Utah limited liability company organized and existing under the laws of the state of Utah, with its principal place of business in Wasatch County, Utah.  True North is now, and since the founding of the company, always has been a shareholder of BGP.

7.      True North's members are: WWT Legacy Trust; SMT Legacy Trust; FRT Legacy Trust; TMT Legacy Trust; WJT Legacy Trust; TBT Legacy Trust; AMT Legacy Trust; and NET Legacy Trust.

8.      Each above trust was formed in and exists under the laws of the State of Utah.

9.      Thurston is the trustee for all the above trusts. He resides in Dorado, Puerto Rico.

10.     Upon information and belief, Defendant Eric Schiermeyer is an individual residing in the state of California.  Schiermeyer has been a BGP director since its inception in

January 2019 and has been its President since around 2021.

11.     Nominal party Blockchain Game Partners, Inc. is a Wyoming corporation organized and existing under the laws of the state of Wyoming, with its principal place of business in Jackson, Wyoming, doing business as "Gala Games."

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1332 and 1367.

13.     This Court has personal jurisdiction over Schiermeyer pursuant to the Founders Agreement in which Schiermeyer "expressly stipulate[d] that any and all disputes . . . shall be litigated in the state or federal courts of Salt Lake City, Utah, USA" and "consent[ed] to personal jurisdiction in those courts." *See* Founders Agreement; *see also* Blockchain Game Partners, Inc. Shareholder Agreement § 14.3.  Further, this Court has personal jurisdiction over Schiermeyer because, among other reasons, Schiermeyer has injured True North in this District. The exercise of jurisdiction over Schiermeyer comports with federal due process.

14.     Venue is proper under 28 U.S.C. § 1391(a) and (b) and pursuant to the Founders Agreement and the Blockchain Game Partners, Inc. Shareholder Agreement.

15.     This action is not a collusive action to confer jurisdiction that this Court would otherwise lack.

## FACTUAL ALLEGATIONS

**A.  The Founders Agreement and BGP Bylaws.**

16.     On or about January 1, 2019, True North and Schiermeyer founded BGP, and "several affiliated companies and entities" (collectively, the "BGP Companies") which were

formed or would be formed to build upon blockchain technology previously owned and developed by True North. These entities were intended to (a) develop and hold intellectual property rights and licenses, (b) develop and operate video games on a public ledger blockchain, (c) develop and establish a blockchain rewards system for video games, (d) sell software and hardware blockchain nodes[1] for the games, (e) host software and hardware nodes, and (f) other affiliated services and products. *See* Founders Agreement.

17.     Pursuant to the Founders Agreement, the parties agreed that BGP would earn revenue, cryptocurrency, digital assets, and rewards, common, rare, and legendary game items (Non-Fungible Tokens, or "NFTs"), and other consideration from, and hold equal stock or other equity interests in, each of the "BGP Companies" (collectively, the "Ownership"). *Id.*

18.     The parties agreed to "equitably share and participate in the Ownership derived from the BGP Companies to vest immediately: Eric [Schiermeyer] – 50%; and True North – 50%." *Id.* BGP's 100,000,000 Preferred Shares were accordingly divided between Schiermeyer and True North with each receiving 50,000,000 shares.

19.     Importantly, True North and Schiermeyer agreed "not to circumvent or compete with the BGP Companies in a manner to earn income, hold ownership, vote, or earn rewards from the services and products of the BGP Companies in a manner to squeeze out or diminish the rights and Ownership of any other party to this Agreement." Founders Agreement.

20.     In addition to the Founders and Shareholder's agreements, BGP's actions are governed by its Bylaws. As to directors, the Bylaws provide that "[t]he board of directors shall

---

[1] A "node" is computer software (granted by a license to operate) that confirms, verifies, and processes transactions on the blockchain, in exchange for "rewards."

have the control and general management of the affairs and business of the corporation.  Such

directors shall in all cases act as a board, regularly convened, by a majority, and they may adopt

such rules and regulations for the conduct of their meetings and the management of the

corporation."  Bylaws § 3.01.

     21.    Since BGP's inception, the directors have always been Wright Thurston and Eric

Schiermeyer.

     22.    Relevant provisions of the Bylaws include:

> **3.05  Director Meetings.**  The annual meeting of the board of directors shall be held each year immediately following the annual meeting of the shareholders. Other regular meetings of the board of directors shall from time to time by resolution be prescribed.  No further notice of such annual or regular meeting of the board of directors need b[e] given.

> **3.06  Special Meetings.**  Special meetings of the board of directors may be called by or at the request of the president of the corporation or any director.  The person or persons authorized to call special meetings of the board of directors may fix any place, either within or without the State of Wyoming, as the place for holding any special meeting of the board of directors.

> **3.07  Notice.**  Notice of any special meeting shall be given at least twenty-four hours previous thereto by written notice if personally delivered, or five days previous thereto if mailed or emailed to each director.

> **3.09  Quorum and Manner of Acting.**  A super majority (75%) of the directors shall constitute a quorum for the transaction of business at any meeting and the act of a majority of the directors present at any meeting at which a quorum is present shall be the act of the board of directors. . . . The directors shall act only as a board and the individual directors shall have no power as such….

> **3.11  Voting.**  At all meetings of the board of directors, each director is to have one vote, irrespective of the number of shares of stock that director holds.

     23.    All actions of officers are subject to the direction of the board of directors.  For

example, while there is a "President" that serves as the chief executive officer of the corporation,

the President's general supervision over the business of the corporation is subject to "the control

of the board of directors."  Bylaws § 4.05.  In fact, the President may only act as "authorized by the board of directors."  *Id.*

24.     Accordingly, under the Founders Agreement and sections 3.09 and 4.05 of the Bylaws, all control of the corporation requires the authorization of both Thurston and Schiermeyer as the two directors on the board.

25.     Schiermeyer currently serves as BGP's President.

**B.  BGP Launches "Gala Games."**

26.     BGP commonly does business as "Gala Games."  Since its founding, Gala Games has grown to become a successful blockchain video game and entertainment company, with millions of dollars in annual revenue and hundreds of employees.

27.     During the first two years of its operation, both Thurston and Schiermeyer participated in the direction and oversight of the company's growing operations and increasing number of employees.

28.     True North and Schiermeyer both contributed millions of dollars (both in the form of USD and cryptocurrency) to develop Gala Games.  In exchange, BGP allocated 14,000 nodes between True North and Schiermeyer (split according to their shares in BGP, i.e., 50/50).

29.     These BGP nodes confirm, verify, and process transactions on the blockchain in exchange for rewards, in this case tokens called "Gala" or the "Gala token."

30.     BGP's base technology, node software mining technology, blockchain referral network, customer service, blockchain non-custodial wallet technology, daily rewards distribution engine, proof of action protocol (that tracks users' actions and sends the data to BGP's blockchain formula), mining dashboard, and tracking for individual users and blockchain

functions, as well as the greater share of financing, were contributed through True North and Thurston.

31.     Schiermeyer provided BGP with his understanding of mobile games, video game models, experienced game staff, and market experience.

32.     Thurston and Schiermeyer partnered to create innovative action points and integrate True North's technology with gaming software.

33.     Nodes individually owned by True North and Schiermeyer started earning Gala rewards in July 2019. The first distribution on the Etherium blockchain was in September 2020.

34.     On September 12, 2020, Schiermeyer received his initial distribution of 2.3 billion Gala from his node rewards which were deposited into his private wallet[2] to which he alone held the private keys.

35.     On the same date, True North received his initial distribution of 1.9 billion Gala from his node rewards which were deposited into True North's private wallet to which True North alone held the private keys

36.     After the initial distributions, any remaining and all additional Gala and NFTs earned by True North and Schiermeyer would be stored in wallets controlled solely by Schiermeyer.

37.     On or about February 2021, BGP finalized the purchase of Sandbox Games. Shortly after the acquisition, the founders agreed to another distribution that included the former owners of Sandbox.

---

[2] A "wallet" is a blockchain storage account used to store cryptocurrency and other digital assets (like a bank account).  Wallets can be accessed using a "key" which operates much like a password for access to an online account.

38.     In or about the first quarter of 2021, following the distribution that resulted from BGP's acquisition of Sandbox, True North and Schiermeyer each separated around 8.6 billion Gala which they individually owned into wallets they individually controlled. Schiermeyer, however, took control of all remaining Gala and NFTs (including those owned by True North and others) by separating them into wallets to which Schiemeyer alone held the keys.

39.     Despite repeated concerns raised by Thurston and requests from BGP shareholders for distributions/payment, Shiermeyer continued to hold these Gala and NFT and even sold some for his personal benefit.

**C.  Schiermeyer Uses BGP Assets for Personal Gain, Acts on Behalf of BGP Without Board Approval And "Burns" Off Millions of Gala Tokens**

40.     Over at least the last twelve (12) months, Schiermeyer has exercised unilateral control over the operations, assets, and profits of BGP. During that time, Schiermeyer has flouted BGP's founding and charter documents and has covertly acted and engaged in transactions on behalf of BGP and used BGP's assets and earnings, often for his own personal benefit, without the consent of BGP's board or its shareholders.

41.     For example, Schiermeyer:

- Caused BGP to send millions of dollars of cryptocurrency to Jason Brink, BGP's President of Blockchain, for unapproved and unknown reasons.

- Caused BGP to distribute valuable NFTs to himself and select BGP employees, without board or shareholder approval.  By design, those NFTs should have been randomly distributed to members of the Gala community.

- Caused BGP to intentionally destroy hundreds of millions of dollars of asset value by "burning" Gala tokens.[3]

---

[3] "Burning" tokens refers to the permanent removal of tokens from circulation, which is typically accomplished by transferring tokens to a "burn address," i.e., a wallet from which they can never be retrieved.  In effect, burning tokens results in their destruction and consequently destroys their value.

- Misappropriated millions of dollars of BGP funds, including, using company funds for buying and renting real estate for personal use, transferring company assets into his own name or the names of entities that he owns or controls, using company funds to hire architects, construction companies, and designers for personal real estate, moving company funds into personal accounts.

- Caused BGP to pay $5 million towards an installment purchase of a corporate jet for Schiermeyer's personal benefit despite the BGP board previously agreeing to sell the jet/BGP's position.

42.     In or about April 2023, without disclosure to, authorization of, or oversight by the board, Schiermeyer directed BGP to replace all Gala tokens on a one-to-one basis with a new version ("Gala v2 tokens").  BGP publicly announced the v1 tokens would be "upgraded" to v2 automatically.

43.     Contrary to the public announcement, Schiermeyer did not cause BGP to "upgrade" all Gala tokens. In fact, upon information and belief, Schiermeyer directed BGP *not* to replace billions of the v1 tokens held by True North and other shareholders.  Instead, Schiermeyer directed BGP to deposit the replacement tokens to wallets controlled by Schiermeyer personally.

44.     Schiermeyer's Gala "upgrade" caused substantial harm to BGP's value by, among other things, causing crypto-currency exchange Coinbase to delist Gala and rendered worthless all Gala held by other Gala holders whose tokens were not accessible to BGP at the time of conversion. It also directly damaged True North and the others who lost all the value in their Gala v1.

45.     Upon information and belief, at or around the same time, Schiermeyer caused BGP to burn billions of Gala v2 tokens belonging to BGP's shareholders, again without board

approval and without the knowledge of or a vote by the shareholders.  In total, Schiermeyer caused BGP to burn around 21 billion Gala v2 tokens, including many replacement tokens belonging to BGP's shareholders. The burn destroyed more than $600 million in assets.

46.     For example, by burning True North's Gala v2 tokens, i.e., the replacement tokens, Schiermeyer effectively converted 5 billion Gala v1 tokens in True North's wallets worth around $00.030 each and then destroyed their value completely.

47.     As a result, True North lost the equivalent of about $151 million in Gala tokens.

48.     Schiermeyer's burn also further destroyed BGP value by effectively centralizing control and power over the Gala ecosystem in Schiermeyer which is antithetical to one of BGP's core principles regarding the development of the larger Gala ecosystem and community.[4]

49.     Schiermeyer's decision to replace v1 tokens with Gala v2 and to burn off Gala tokens were not explained to, nor approved or overseen by, the BGP board or its shareholders. Nevertheless, after a public announcement of Schiermeyer's actions, Thurston repeatedly informed BGP's corporate counsel that Schiermeyer's actions violated the companies' organizing documents, but BGP's corporate counsel took no corrective action.

50.     Upon information and belief, while Schiermeyer burned off True North's Gala tokens (and Gala tokens belonging to other shareholders), Schiermeyer reserved some Gala v2 tokens for himself.  Schiermeyer also granted himself sole control over company wallets receiving future v2 tokens and other digital assets.

51.     Upon information and belief, Schiermeyer further breached his fiduciary duties by

---

[4] Decentralization and transparency are key principles behind all blockchain projects. Burning essentially centralized control in fewer community members as BGP and Schiermeyer became the two largest holders of Gala token by a substantial margin.

using company funds to buy and rent real estate for personal use, transferring company assets into his own name (via entities that he created), hiring architects, construction companies, and designers for personal real estate, and moving funds into his personal accounts.

52.     Moreover, while the company board unanimously voted on January 11, 2023, to liquidate non-crypto assets because of a general downturn in the value of various cryptocurrencies within the digital assets economy, Schiermeyer instead directed an installment payment of $5,000,000 to be made to purchase a Gulfstream airplane in April 2023 for his personal use.  This expenditure was not disclosed to or approved by the board, and contradicted the board's vote to liquidate (not purchase) physical property.

53.     Schiermeyer's conduct was, upon information and belief, deceptive and intentional, as the "financial statements" provided by Schiermeyer to Thurston as director were inaccurate and omitted significant financial information and details about Schiermeyer's transactions including the failure to disclose accurately the creation of new BGP companies, real estate transactions for the benefit of Schiermeyer, and the conversion of Gala.

54.     Upon information and belief, Schiermeyer later directed the company controller not to share any financial information with director Thurston and deleted Thurston from internal company communication channels.

55.     Thurston, as director, has attempted to discuss these and other matters with Schiermeyer and has made multiple attempts to call board meetings, to meet with Schiermeyer, and to obtain information about Schiermeyer's activities.  Schiermeyer has rejected all of Thurston's good faith attempts to confer.

**D. Schiermeyer Breaches the Duty of Loyalty and Usurps Corporate Opportunities.**

56.     To maximize the value of the BGP intellectual property and to expand the Gala ecosystem into other markets, BGP's board discussed on several occasions Gala Music and Gala Film. Both potential enterprises were intended and agreed to be wholly owned subsidiaries of BGP.  All funding, staffing, intellectual property for these new entities came from BGP.

57.     In its January 2023 meeting, the board approved in concept exploring a path to move forward with Gala Music first. No decisions were made to form the companies or to move forward pending resolution on issues regarding ownership, funding, overall structure, and business plans.

58.     Thurston attempted to address these issues with Schiermeyer at the BGP board meeting on April 6, 2023, but Schiermeyer lied to Thurston by denying that any foreign entities had been created – when in fact the music entity had been formed months earlier.

59.     Unbeknownst to Thurston, upon information and belief, Schiermeyer formed Gala Music in Switzerland and, without board approval, authorization, or consent, unilaterally installed himself as the largest shareholder.  He also formed a sales entity in Dubai and again unilaterally installed himself as its largest shareholder.  In each case, Schiemeyer excluded BGP, True North, and the many other BGP shareholders from any ownership.  Schiermeyer breached his fiduciary duty of loyalty and was unjustly enriched by taking a BGP opportunity for himself.

60.     Upon information and belief, Schiermeyer has or intends to transfer or use much of BGP's current business, tech platform, assets, and intellectual property to benefit the foreign legal entities, yet Schiermeyer has effectively removed BGP, True North, and other shareholders from the benefits of the expanded platforms and revenues flowing from these entities.

61.     Schiermeyer's actions have not inured to the benefit of BGP or its shareholders.

62.     To the contrary, Schiermeyer's refusal to answer calls, respond to communications, attend meetings, provide information about his unilateral actions, or to take any cooperative action to protect BGP and its shareholders from the conversion, waste, or destruction of BGP assets has greatly damaged BGP and its shareholders, including True North.

63.     Schiermeyer's creation of the separate foreign legal entities to pursue opportunities rightfully belonging to BGP will further damage BGP's shareholders by diminishing the value of BGP as a company.

**E.  Schiermeyer Exercises Control of the Nodes.**

64.     Upon information and belief, Schiermeyer recently announced that BGP would distribute 8,000 nodes to BGP's employees. At the same time, Thurston, upon information and belief, understands that Schiermeyer intends to shut off True North's nodes, depriving True North of significant assets.  While Thurston is not opposed to providing additional benefits and incentives to BGP employees, including where appropriate, in the form of nodes the plan for doing so was never disclosed to or approved by the board or shareholders.

65.     Each node currently can generate a certain amount of value in the form of various digital assets each day.

66.     By shutting off True North's nodes, Schiermeyer would deprive True North of the opportunity to generate valuable digital assets over time.

67.     Schiermeyer's unilateral – and improper – conversion/shutting off of True North's nodes is not his first removal of nodes, however, as he has done so at least twice before.  For example, in 2021, Schiermeyer shut off 500 nodes that True North previously gave to Liberty

United, a blockchain company, in exchange for services rendered.

**F.   Derivative and Demand Futility.**

68.     True North brings the First, Second, Third and Fourth Claims for Relief derivatively on behalf of BGP to redress injuries suffered and to be suffered by BGP as a direct result of Scheirmeyer's breaches of his fiduciary duties, was of corporate assets, unjust enrichment, and gross abuse of his position as director and officer of the company.

69.     True North will adequately and fairly represent the interests of BGP in enforcing and prosecuting its rights.

70.     Based on the facts set forth in this Complaint, applicable law, and the longstanding rule that equity does not compel a useless and futile act, prefiling demand upon the BGP board to institute action against Schiermeyer, would be futile and therefore is excused.

71.     BGP's bylaws require a 2/3 majority vote for the BGP board to act. There are only two BGP directors – Thurston and Schiermeyer.  Thus, the required super majority of the board cannot exercise independent and objective judgment in deciding whether to bring this action or vigorously pursue it because Schiermeyer participated personally in the wrongful conduct described herein and personally benefitted from the wrongful conduct described herein. Approving the initiation and vigorous prosecution of this derivative action would require Schiermeyer to approve suing himself, rendering any request for board approval futile.

72.     Any ability to resolve this deadlock by shareholder vote is similarly futile. The Bylaws require a supermajority vote (75% of shares) for any action to be taken by the shareholders, but True North and Schiermeyer are both own about 44% of the outstanding shares.  Thus, it would be futile to seek to hold a shareholder's meeting to remove Shiermeyer as

a director and president of BGP or to attempt to direct the board to initiate and vigorously prosecute this action as it would require Schiermeyer to approve filing and pursuing a suit against himself.

## FIRST CLAIM FOR RELIEF
**(Derivative Claim for Breach of Fiduciary Duty)**

73.     True North incorporates and realleges the allegations set forth above as though fully set forth herein.

74.     Schiermeyer owed and owes BGP and its shareholders fiduciary obligations.  By reason of his fiduciary relationship, Schiermeyer owed and owes BGP and its shareholders the highest obligation of candor, good faith, fair dealing, loyalty, and due care.

75.     Schiermeyer violated and breached his fiduciary duty of candor, good faith, fair dealing, loyalty, and due care.  Schiermeyer violated his fiduciary duty by, among other acts herein described, (a) destroying company and shareholder assets, (b) converting company funds for personal use, (c) wasting company funds, (d) launching competing companies and omitting True North and other BGP shareholders as shareholders with the same percentage interests in those entities (e) cutting Thurston out of the management of BGP without notice or shareholder vote, and (f) causing BGP to provide incomplete, false or misleading financial information to True North and Thurston; and (g) causing BGP to fail and refuse to provide True North or Thurston access to or copies of accurate and complete company records.  Schiermeyer did so unilaterally and for his personal benefit, in knowing or reckless disregard for the interests of BGP and its shareholders. These actions were disloyal, unlawful self-dealing, and could not have been a good faith exercise of prudent business judgment nor were they taken to protect and promote BGP's interests.

*ACTIVE 688127843v2*

76.     As a direct and proximate result of Schiermeyer's breach of his fiduciary obligations, BGP and its shareholders have sustained significant damages, in an amount to be proven at trial but which exceeds $600 million.

77.     BGP has no adequate remedy at law and, unless Schiermeyer is preliminarily and permanently enjoined from further breaching his obligations to the company, BGP will continue to suffer imminent and irreparable harm.

## SECOND CLAIM FOR RELIEF
### (Derivate Claim for Waste of Corporate Assets)

78.     True North incorporates and realleges the allegations set forth above as though fully set forth herein.

79.     As a result of Schiermeyer's unilateral and unauthorized conduct, BGP burned more than approximately 20.9 billion Gala tokens belonging to its shareholders and others in the Gala community worth more than $600 million.  As a further result of Schiermeyer's unilateral conduct, BGP (at Schiermeyer's direction) contributed at least $5 million in an installment payment for a corporate jet for Schiermeyer's personal use.  Schiermeyer's actions on behalf of BGP have resulted not just in the loss of millions of corporate assets but irreversible damage to BGP's reputation and standing.

80.     As a result of the waste of corporate assets, Schiermeyer is liable to BGP and its shareholders in an amount to be proven at trial which exceeds $600 million.

81.     BGP has no adequate remedy at law and, unless Schiermeyer is preliminarily and permanently enjoined from further breaching his obligations to the company, BGP will continue to suffer imminent and irreparable harm.

*ACTIVE 688127843v2*

**THIRD CLAIM FOR RELIEF**
**(Derivative Claim for Unjust Enrichment)**

82.      True North incorporates and realleges the allegations set forth above as though fully set forth herein.

83.      By his wrongful actions, Schiermeyer was unjustly enriched at the expense of and to the detriment of BGP and its shareholders (including True North).  As described herein, Schiermeyer was unjustly enriched by converting company assets for personal use and by burning shareholder Gala tokens while retaining huge amounts of Gala for personal use. BGP received no benefit from Schiermeyer's waste of company assets, or his use of company confidential information and financial assets for his personal gain. To the contrary, BGP was substantially harmed by those acts.

84.      True North, as a shareholder and representative of BGP, seeks restitution from Schiermeyer and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Schiermeyer from his wrongful conduct and fiduciary breaches. A constructive trust for the benefit of BGP should be imposed on all benefits gained or to be gained by Schiermeyer as a result of his wrongful acts.

85.      BGP has no adequate remedy at law and, unless Schiermeyer is preliminarily and permanently enjoined from further breaching his obligations to the company, BGP will continue to suffer imminent and irreparable harm.

**FOURTH CLAIM FOR RELIEF**
**(Direct and Derivative Claim for Judicial Removal**
**of Schiermeyer as Director of BGP)**

86.       True North incorporates and realleges the allegations set forth above as though fully set forth herein.

*ACTIVE 688127843v2*

87.     The Wyoming Business Corporation Act ("WBCA") Section 17-16-809 provides the Court with the authority to remove a director when "[t]he director engaged in fraudulent conduct with respect to the corporation or its shareholders, grossly abused the position of director, or intentionally inflicted harm on the corporation" and "[c]onsidering the director's course of conduct and the inadequacy of other available remedies, removal would be in the best interest of the corporation."

88.     WBCA Sections 17-17-140 and 17-17-141 further provide the Court with the authority, upon the petition of a shareholder, to remove a director of the corporation, if "[t]he directors or those in control of the corporation are deadlocked in the management of the corporation's affairs, the shareholders are unable to break the deadlock, and the corporation is suffering or will suffer irreparable injury or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally because of the deadlock."

89.     Schiermeyer's unilateral and unauthorized conduct described herein has greatly damaged BGP and its shareholders, including by the destruction of more than $600 million in company and shareholder assets, conversion of company funds and other assets for personal use, and by launching competing companies and unilaterally inserting himself as majority shareholder.

90.     Thurston, as director of BGP, has tried in vain to schedule meetings with Schiermeyer regarding his actions and the future of the company.  Thurston has further requested meetings and the adoption of resolutions to remove Schiermeyer as director of BGP. Schiermeyer has rejected various proposals and requests, resulting in a deadlock between the two directors.

91.     True North and Schiermeyer are also the two largest shareholders, each holding about 44% of the outstanding shares of the company.

92.     To break any director deadlock, however, a supermajority (75%) vote of shareholders is required.  Because of True North and Schiermeyer's deadlock, and their large ownership of shares, the shareholders cannot break the directors' deadlock regarding the management of the company and how to proceed.

93.     Accordingly, judicial removal of Schiermeyer is necessary to protect the company and its shareholders and to break the deadlock currently existing between BGP's directors and shareholders.

94.     WBCA Sections 17-17-140 and 17-17-141 similarly authorize, on the same grounds, the removal of an officer of the company.

95.     True North, as 44% shareholder, and derivatively on behalf of BGP, seeks an order of this Court pursuant to WBCA Sections 17-16-809, 17-17-140, and 17-17-141 for Schiermeyer to be removed as director and President of BGP.

### FIFTH CLAIM FOR RELIEF
#### (Direct Claim for Breach of Contract)

96.     True North incorporates and realleges the allegations set forth above as though fully set forth herein.

97.     As described herein, True North and Schiermeyer executed the Founders Agreement dated January 1, 2019, with each party to become a 50% owner of the corporation. The Founders Agreement further provided that neither party shall "circumvent or compete with the BGP Companies in a manner to earn income, hold ownership, vote, or earn rewards from the services and products of the BGP Companies in a manner to squeeze out or diminish the rights

and Ownership of any other party to this Agreement."

98.     True North has fully performed its contractual obligations under the Founders

Agreement.

99.     As described herein Schiermeyer has breached the agreement by taking unilateral

(i.e., *not* supermajority) action as director of BGP and as co-founder to squeeze True North out

of, and/or diminish True North's rights and Ownership in, BGP and the BGP Companies.

100.    True North has suffered and will continue to suffer damages in an amount to be

determined at trial, but which are at least in excess of $75,000.  In addition, as True North's

damages cannot be adequately compensated through monetary relief, True North seeks

preliminary and permanent injunctive relief requiring Schiermeyer to abide by the terms of the

Founders Agreement.

101.    Because Schiermeyer threatens to continue his wrongful acts including by turning

off or redistributing True North's BGP nodes which would cause True North additional,

imminent, and irreparable harm, he must be preliminarily and permanently enjoined from further

breaching the Founders Agreement.

## SIXTH CLAIM FOR RELIEF
### (Direct Claim for Conversion)

102.    True North incorporates and realleges the allegations set forth above as though

fully set forth herein.

103.    As a result of Schiermeyer's decision to replace all Gala v1 tokens (held in True

North's private wallet) with Gala v2 tokens (deposited into a wallet controlled by Schiermeyer),

Schiermeyer converted about $151 million worth of Gala tokens belonging to True North.

Schiermeyer then burned the Gala v2 tokens that should have been provided to True North.

104.    Schiermeyer had no right to claim or exercise ownership over any Gala tokens belonging to True North (whether v1 or v2 tokens).

105.    Schiermeyer has therefore willfully and intentionally converted True North's property, resulting in damage to True North.

106.    As a direct and proximate result of Schiermeyer's conversion of True North's property (the Gala tokens), True North has been damaged in an amount not less than $151 million.

107.    Schiermeyer's conversion constitutes acts that result from willful and malicious or intentionally fraudulent conduct or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of True North, entitling True North to an award of punitive damages against Schiermeyer, in an amount sufficient to punish the conduct in accordance with the law.

## PRAYER FOR RELIEF

WHEREFORE, True North demands judgment as follows:

A.    On the First, Second, and Third Claims for Relief, (i) for judgment against Schiermeyer for shareholders' benefit in an amount according to proof but no less than $600 million in monetary damages; and, in addition to monetary relief, (ii) an order directing Schiermeyer to account for damages he caused and all profits, special benefits, and unjust enrichment he obtained through his wrongful conduct, (iii) for a preliminary and permanent injunction prohibiting Schiermeyer from using BGP's property (intellectual and otherwise) to benefit competing companies; and (iv) ordering Schiemeyer to perform his fiduciary duties to BGP and its shareholders.

B.      On the Fifth and Sixth Claims for Relief, for judgment against Schiermeyer for True North's benefit in an amount according to proof but in no event less than $150 million in monetary damages; and, in addition to monetary relief, for a preliminary and permanent injunction ordering Schiermeyer to abide by the terms of the Founders Agreement.

C.      On the Sixth Claim for Relief, for an order awarding punitive damages on account of Schiermeyer's willful and malicious conversion of True North's property in an amount to be determined at trial.

D.      On the Fourth Claim for Relief, for an order preliminarily and permanently removing Schiermeyer as both director and President/Chief Executive Officer (and/or any other role) of BGP.

E.      An order awarding True North, as prevailing party, reasonable attorneys' fees as deemed appropriate by the Court.

F.      An award of costs to True North, as the prevailing party, as deemed appropriate by the Court.

G.      Pre-judgment and post-judgment interest at the maximum rate provided by law.

H.      Such other and further relief as this Court may deem appropriate under the circumstances.

**JURY DEMAND**

True North demands a trial by jury.


DATED: August 31, 2023


GREENBERG TRAURIG, LLP


/s/ *Marc T. Rasich*
Marc T. Rasich
John W. Huber
Daniel J. Wadley
Alexander Baker

*Attorneys for Plaintiff*
*True North United Investments, LLC*

## **VERIFICATION**

I, Wright Thurston, as Manager of True North United Investments, LLC, declare as follows:

True North is the plaintiff in this action. True North and its representatives are familiar with the allegations contained in the Complaint, and hereby authorizes the filing of the Complaint. I verify that the foregoing is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.


Date: 06/14/2023 | 4:06 PM PDT
_____

DocuSigned by:

_____
44B1EF571FD3413...

Wright Thurston, on behalf of
True North United Investments, LLC

*ACTIVE 688127843v2*